Albert NEIGER, Plaintiff,

v.

SHEET METAL WORKERS INTERNA-
TIONAL ASSOCIATION, AFL–CIO,
et al., Defendants.

No. 76CV196–S.

United States District Court,
W. D. Missouri, S. D.

May 11, 1979.

Donald W. Jones, Springfield, Mo., for plaintiff.

Lincoln J. Knauer, Jr., Benjamin J. Francka, Springfield, Mo., John Gibson, Kansas City, Mo., Raymond J. Sweeney, Toledo, Ohio, for defendants.

## MEMORANDUM AND ORDER GRANTING MOTIONS FOR SUMMARY JUDGMENT

COLLINSON, District Judge.

From July 7, 1972, until January 3, 1974, when he was discharged, plaintiff Neiger was employed as a laborer by defendant Paul Mueller Company (hereinafter Company). From January 8, 1973, until December 31, 1973, Neiger was a member of Local 146, Sheetmetal Workers International Association, AFL–CIO (hereinafter Local 146). At the time of Neiger's dismissal from the Company, Article II, § 1, of the collective bargaining agreement in effect between the Company and Local 146 provided, in pertinent part:

As a condition of employment all employees covered by this agreement shall be required to become members of the Union in good standing thirty (30) days after the effective date of this agreement or thirty (30) days after the date of their employment, whichever occurs later, and to remain members in good standing for the duration of the Agreement. For purposes of this Agreement, membership in good standing shall consist of the pay-

ment, or tender of payment of regular monthly membership dues and the initiation fee (if owed by the employee).

In addition, Article 16, § 10, of Local 146's Constitution provided that:

Any member who becomes two (2) months in arrears shall be recorded suspended by the local financial secretary-treasurer and by the General Secretary-Treasurer without notice and under no circumstances shall any extension of time be granted. No back dues shall be accepted from any member suspended in accordance with this Section and no official receipt shall be issued to record such dues after the expiration of the two (2) month limit or predated to avoid suspension.

On January 8, 1973, Neiger signed an application for membership in Local 146, paid his initiation fee, and paid his first three months' dues in advance. Thereafter, Neiger paid his dues through October 31, 1973, but did not pay them after that date. He now claims that his reason for not paying them is that he merely forgot.

On January 1, 1974, Neiger then being over 60 days in arrears in his dues, the union business manager suspended him from membership in good standing in Local 146. On January 2, 1974, without notice to Neiger, Local 146 notified the Company that Neiger had become two months in arrears in the payment of his dues and had, therefore, been suspended from membership in Local 146. The Company treated the union's notice as a request to discharge and on January 3, 1974, notified Neiger that, pursuant to Article II, § 1, of the collective bargaining agreement, he was discharged from his employment because of his failure to pay his union dues. Upon being informed of his discharge, and the reason therefor, Neiger promptly tendered the tardy dues, but Local 146's business manager refused to accept the dues tendered.

On February 27, 1974, Neiger filed unfair labor practice charges with the National Labor Relations Board (hereinafter Board) against both the Company and Local 146.

After investigation by the Board, the Regional Directors sent the following letter to Neiger:

Dear Mr. Neiger:

The above captioned cases charging violations under Section 8 of the National Labor Relations Act, as amended, have been carefully investigated and considered.

As a result of the above referenced charges, it does not appear that further proceedings on either of them are warranted. The evidence shows that you were covered by a collective bargaining agreement (effective from August 9, 1971, until midnight July 10, 1974) between the charged Company and the charged Union, that the agreement contains a valid union security provision (Article II Section 1), and that you were aware of your obligations under the agreement and of the pertinent Union rules with respect to retention and loss of membership in good standing in the Union, which is a requirement of the contractual union security provision. Nevertheless, you became delinquent in two consecutive monthly dues payments to the Union, which fact resulted in your automatic suspension from membership in it. Under these circumstances, neither the Union's request to the Company to discharge you, nor the Company's action in honoring its contractual commitment by actually discharging you, can be deemed to be violative of Section 8(b)(1)(A) and (2) or Sections 8(a)(1) and (3) of the act, respectively. I am, therefore, refusing to issue a complaint in either of these matters. . . .

The Regional Director's letter went on to advise Neiger of his right to appeal to the General Counsel, but no appeal was taken from the Regional Director's decision.

On April 14, 1976, Neiger commenced this action in the Circuit Court of Greene County, Missouri. Neiger's petition set forth his claims against defendants herein in three separate counts. Count I alleges, in pertinent part, that:

Defendant Union on behalf of the International Union and by and through its agents aforesaid, in violation of its duty to fairly represent Plaintiff in connection with his employment unlawfully demanded the employer to discharge the Plaintiff, and the Defendant employer (Paul Mueller Company) complied with said unlawful demand, in violation of the collective bargaining agreement attached hereto as Exhibit "A", without the Plaintiff having had any opportunity to be advised fully of his dues paying obligations or of any claimed delinquency, or of his rights under the law in connection therewith and without any opportunity for the Plaintiff to correct any claimed delinquency or to have an impartial hearing before an arbitrator or otherwise to afford him an opportunity to fully protect his rights to employment at Paul Mueller Company.

12. The actions of Defendants aforesaid, through its aforesaid agents, were fraudulent, deceitful, dishonest, arbitrary and capricious . . . [1]

Count I seeks actual and punitive damages in the amount of $300,000.00. Count II alleges a violation of the Missouri service letter statute, Section 290.140, RSMo (1969), and seeks actual and punitive damages in the amount of $75,000.00. In Count III, Neiger seeks an Order requiring defendants to reinstate him in his prior position. The defendants named in plaintiff's petition are the Sheet Metal Workers International Association, AFL–CIO (hereinafter International), and Edward J. Carlough and David S. Turner as officers, agents and representatives of the class of all members of the International, Local 146, and its successors Local 208 and Local 36,[2] Harold Tindell and Leo Hughes as officers, agents and repre-

sentatives of the members of Local 146 and its successors,[3] and the Paul Mueller Company.

On May 12, 1976, all defendants removed Neiger's state court action to this Court.

█ Each defendant has now filed a motion for summary judgment, and the case pends on those motions.. The defendants urge several different arguments in support of their motions, but one common argument advanced by each defendant is that this Court lacks jurisdiction over the subject matter of this lawsuit. The substance of the common argument advanced by the defendants is that the National Labor Relations Act preempts the jurisdiction of state and federal courts to regulate the conduct of which plaintiff herein complains.

The preemption principle upon which defendants rely was first clearly set forth in *San Diego Building Trades v. Garmon*, 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959) (hereinafter *Garmon*), where the Supreme Court held:

When it is clear or may fairly be assumed that the activities which a State purports to regulate are protected by § 7 of the National Labor Relations Act, or constitute an unfair labor practice under § 8, due regard for the federal enactment requires that state jurisdiction must yield. To leave the States free to regulate conduct so plainly within the central aim of federal regulation involves too great a danger of conflict between power asserted by Congress and requirements imposed by state law.

359 U.S. at 244, 79 S.Ct. at 779. The preemption principle was recently reaffirmed by the Court when it held that, "the National Labor Relations Act pre-empts the

---

1. Count I also asserted that the union shop clause of the collective bargaining agreement was in violation of the Missouri Constitution and § 14(b) of the National Labor Relations Act. In *Independent Stave Co., Inc. v. Higdon*, 572 S.W.2d 424 (Mo.1978), however, the Missouri Supreme Court held that the Missouri Constitution does not prohibit union shop contracts. This theory of liability does not, therefore, merit further discussion.

2. Subsequent to Neiger's discharge, Local 146's assets and membership were divided between two successor locals, Local 208 and Local 36. Since that change does not affect the outcome of this case, all references to local unions will be to Local 146.

3. With the exception of this Court's discussion of the liability of the International, the four union defendants will be treated as one entity (hereinafter union defendants).

jurisdiction of state and federal courts to regulate conduct 'arguably subject to § 7 or § 8 of the Act.'" *Motor Coach Employees v. Lockridge*, 403 U.S. 274, 284, 91 S.Ct. 1909, 1916, 29 L.Ed.2d 473 (1971) (hereinafter *Lockridge*).

Section 8(b)(2) of the National Labor Relations Act, 29 U.S.C. § 158(b)(2) (1976) (hereinafter the Act), makes it an unfair labor practice for a union:

> to cause or attempt to cause an employer to discriminate against an employee in violation of subsection (a)(3) . . . or to discriminate against an employee with respect to whom membership in such organization has been denied or terminated on some ground other than his failure to tender the periodic dues and the initiation fees uniformly required as a condition of acquiring or retaining membership.

Section 8(a)(3), 29 U.S.C. § 158(a)(3) (1976), makes it an unfair labor practice for an employer:

> by discrimination in regard to tenure of employment ,. . . to encourage or discourage membership in any labor organization: *Provided*, That nothing in this Act . . . shall preclude an employer from making an agreement with a labor organization . . . to require as a condition of employment membership therein on or after the thirtieth day following the beginning of such employment or the effective date of such agreement, whichever is the later . . .: *Provided further*, That no employer shall justify any discrimination against an employee for non-membership in a labor organization . . . if he has reasonable grounds for believing that membership was denied or terminated for reasons other than the failure of the employee to tender the periodic dues and the initiation fees uniformly required as a condition of acquiring or retaining membership . .

Since Neiger was discharged either for failure to pay his regularly required dues or for some reason other than failure to pay those dues, his discharge was either protected by the first proviso to § 8(a)(3) or prohibited by § 8(b)(2). Thus, under the *Garmon* and *Lockridge* holdings, a claim based upon his discharge would appear to be preempted by the National Labor Relations Act.

In *Vaca v. Sipes*, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967) (hereinafter *Vaca*), however, the Court recognized an exception to the preemption rule:

> There are some intensely practical considerations which foreclose pre-emption of judicial cognizance of fair representation duty suits, considerations which emerge from the intricate relationship between duty of fair representation and the enforcement of collective bargaining contracts. For the fact is that the question of whether a union has breached its duty of fair representation will in many cases be a critical issue in a suit under L.M.R.A. § 301 charging an employer with a breach of contract . . . Under this section, [L.M.R.A. § 301] courts have jurisdiction over suits to enforce collective bargaining agreements even though the conduct of the employer which is challenged as a breach of contract is also arguably an unfair labor practice within the jurisdiction of the NLRB. *Garmon* and like cases have no application to § 301 suits.

386 U.S. at 184, 87 S.Ct. at 913.

Furthermore, the *Vaca* exception to the preemption doctrine was expanded in *Lockridge, supra*, where the Court stated:

> The pre-emption doctrine we apply today is, like any other purposefully administered legal principle, not without exception . . .
>
> In § 301 of the Taft-Hartley Act, 61 Stat. 156, Congress authorized federal courts to exercise jurisdiction over suits brought to enforce collective bargaining agreements . . . It is firmly established, further, that state courts retain concurrent jurisdiction to adjudicate such claims . . .
>
> Our cases also clearly establish that individual union members may sue their employers under § 301 for breach of a promise embedded in the collective bargaining agreement that was intended to

confer a benefit upon the individual . .

This Court has further held in *Humphrey v. Moore,*
[375 U.S. 335, [84 S.Ct. 363, 11 L.Ed.2d 370] (1964)] that § 301 will support, regardless of otherwise applicable preemption considerations, a suit in the state courts by a union member against his union that seeks to redress union interference with rights conferred on individual employees by the employer's promises in the collective bargaining agreement, where it is proved that such interference constituted a breach of the duty of fair representation.

403 U.S. at 297–299, 91 S.Ct. at 1923. The *Lockridge* Court went on to explain its holding, "For such a claim to be made out, [breach of duty of fair representation] Lockridge must have proved 'arbitrary or bad faith conduct on the part of the union.' . . . There must be 'substantial evidence of fraud, deceitful action or dishonest conduct.'" 403 U.S. at 299, 91 S.Ct. at 1924.

Thus, if Neiger's petition had contained no allegations of fraud, deceitful action, or dishonest conduct, this Court would, under the *Garmon* and *Lockridge* holdings, be required to conclude that the State Circuit Court in which this case was filed lacked jurisdiction over the suit, and that this Court's derivative jurisdiction on removal was also lacking. *Lockridge, supra* at 301, 91 S.Ct. 1909. As discussed above, however, Neiger's petition alleges, in Count I, that, "The actions of the defendants aforesaid, through its aforesaid agents, were fraudulent, deceitful, dishonest, arbitrary and capricious and were a breach of the duty of fair representation on the part of the labor organization . . ." Since Neiger's allegations, fairly read, must be taken to allege a breach of the duty of fair representation against the union defendants and a breach of the collective bargaining agreement against the Company, and since the petition clearly alleges fraud, deceit, dishonesty, arbitrariness, and caprice, this Court feels compelled to conclude that this case is within the exceptions to the preemption doctrine as set forth in *Lockridge, supra,* and *Vaca, supra.* This Court holds, therefore, that the State Circuit Court had and, accordingly, that this Court has, subject matter jurisdiction over this case.

■ The conclusion that the present case is within the Court's jurisdiction does not, however, mean that defendants herein are not entitled to summary judgment. This Court is, of course, aware that, "summary judgment is an extreme remedy, and one which is not to be granted unless movant has established his right to a judgment with such clarity as to leave no room for controversy and that the other party is not entitled to recover under any discernible circumstances." *Robert Johnson Grain Co. v. Chemical Interchange Co.,* 541 F.2d 207, 209–10 (8th Cir. 1976). Notwithstanding the Eighth Circuit's view of summary judgment, this Court is convinced that the defendants in this case are entitled to the extreme remedy they seek.

■ As discussed above, in *Lockridge,* the Supreme Court held that, "For such a claim [breach of duty or fair representation] to be made out, Lockridge must have proved 'arbitrary or bad-faith conduct on the part of the Union.' *Vaca v. Sipes, supra* [386 U.S.] at 193 [87 S.Ct. 903]. There must be 'substantial evidence of fraud, deceitful action or dishonest conduct.'" 403 U.S. at 299, 91 S.Ct. at 1294. Based upon the above-quoted language from *Lockridge,* it is clear that an essential element of any breach of duty of fair representation claim is that the union acted either arbitrarily, capriciously, with bad faith, fraudulently, deceitfully, or dishonestly. For the purposes of these motions for summary judgment, therefore, one crucial question is whether there remains a factual dispute over whether the defendant unions acted arbitrarily, capriciously, with bad faith, fraudulently, deceitfully or dishonestly. If it is uncontradicted that the union defendants did not act in any such manner, then those defendants are entitled to judgment as a matter of law. This Court is convinced that Neiger has dropped his origi-

nal allegations on this point and that the union defendants are, therefore, entitled to the summary judgment they seek.

Pursuant to Rule 16, Fed.R.Civ.P., this Court has adopted Local Rule 20, which requires parties to submit, at the close of discovery, their stipulations of facts that are not in dispute and the facts that remain to be litigated. In compliance with this Court's local rule, the parties to this action have submitted their respective stipulations. Those stipulations are, hereby, approved by this Court, and as provided by Rule 16, Fed.R.Civ.P., they control the subsequent course of this action.

 Plaintiff Neiger's stipulations, filed February 15, 1978, make clear that he has abandoned his allegations that the union defendants and the Company acted fraudulently, deceitfully, dishonestly, arbitrarily, or capriciously in their actions that resulted in his discharge. Plaintiff's Proposed Pre-Trial Order No. 2, filed February 15, 1978, Sections III–VI. In fact, Neiger stipulates that the union's policy was to automatically suspend membership of any union member who was 60 days late in paying his dues and to refuse to accept a late tender from any such person. Neiger also stipulates that it was the union's policy to request the Company to discharge any person suspended from union membership. In addition, Neiger stipulates that the union's policies on suspension from membership, late payment of dues, and requests for discharge were administered by the union to cause the discharge of many employees other than Neiger. This Court has searched in vain for any reference in any of Neiger's stipulations, in any of the discovery that has been conducted by the parties, and in any of the briefs filed by Neiger, to any fraud, deceit, dishonesty, or arbitrary and capricious conduct.

It is clear from Neiger's suggestions in opposition to defendants' motions that his theory of liability against the defendant unions is that they breached their duty of fair representation by failing to give Neiger a pre-termination warning of his delinquency, and by refusing to accept his post-termi-

nation tender of dues. It is also clear, however, that this theory of liability was specifically rejected by the Supreme Court in *Lockridge*. Accordingly, this Court holds that, since Neiger has stipulated that there is no remaining factual dispute over whether defendant unions acted arbitrarily, with bad faith, fraudulently, deceitfully, or dishonestly, he cannot prevail on his claim that the union breached its duty of fair representation. Thus, the union defendants are entitled to judgment as a matter of law on the claims that they breached their duty of fair representation.

 This Court's holding that Neiger cannot, in this case, establish that the unions breached their duty of fair representation, requires that this Court also grant summary judgment in favor of the Company. It is uncontradicted that Neiger did not utilize the grievance procedures available to him under the collective bargaining agreement. In addition, in *Vaca v. Sipes*, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967), the Supreme Court held that, while a failure to exhaust available grievance procedures is not an absolute bar to a § 301 suit against an employer, a plaintiff who has not exhausted the grievance procedures must, in order to prevail in his § 301 suit, prove not only that his discharge was in violation of the collective bargaining agreement, but must also prove that the union breached its duty of fair representation to the plaintiff. *Vaca, supra* at 186, 87 S.Ct. 903. Since Neiger did not exhaust the contractual grievance procedures available under the collective bargaining agreement, an essential element of his § 301 claim against the Company is that the union breached its duty of fair representation to him. As discussed above, Neiger has stipulated that there is no remaining factual dispute over whether the union, in requesting his discharge, acted arbitrarily, with bad faith, fraudulently, deceitfully, or dishonestly. Neiger cannot, therefore, prevail on his claim that the union breached its duty of fair representation. Since Neiger cannot show that the union breached its duty of fair representation, and since such a show-

ing is an essential element of his § 301 suit against the Company, the Company is entitled to judgment on the § 301 claims as a matter of law.

In addition to the reasons set forth above, there are alternative grounds for this Court's conclusion that summary judgment is appropriate in this case. The first of these alternative grounds is that Neiger failed to use the union's internal appeal procedure to challenge the local union's actions in requesting his discharge and in refusing to accept his late tender of dues. In support of their motions for summary judgment, the union defendants filed a copy of the union constitution that Neiger has acknowledged receiving when he became a member of the union and that was in effect when he was discharged. Article 19 of that constitution provides, in pertinent part:

Sec. 1. Any . . . member of any local union or council thereof whose constitutional rights are violated by any decision or order of a local union or council or a legally constituted tribunal thereof or by any decision or order of any general officer or officers . . . shall have the right to appeal as provided in this Article.

Sec. 2(a). Except as otherwise provided in this Constitution all original appeals shall be referred to the General President [of the International] for consideration and decision . . .

Sec. 3(a). All appeals from decisions or orders of the General President . . . shall be filed in writing with the General Secretary-Treasurer and a copy mailed to the opposing parties within sixty (60) days from the date of the decision or action from which appeal is taken . .

Sec. 4. Unless otherwise provided in this Constitution, all appeals from decisions of the General Executive Council shall be referred to the Grievances and Appeals Committee of a General Convention which shall render its decision upon the written record made before the General Executive Council. Any party to an appeal to the Grievances and Appeals Committee shall be permitted to appear before said committee for the purposes of argument . . .

Sec. 8. The General President, General Executive Council and General Convention shall have the right to affirm, amend, modify, or reverse any decision which has been submitted to him or to them on appeal . . .

Sec. 9. Subject to applicable laws, no local union, council, or officer or member thereof shall appeal to the Civil Courts for redress until all of the internal remedies provided in this Constitution, including the right of appeal have been exhausted.

■ It is uncontradicted that Neiger did not utilize any of the remedies available under the union's constitution to appeal Local 146's request for his discharge or its refusal to accept his late tender of dues. In addition, Neiger has not pleaded, or even argued, any justification for his failure to exhaust the available internal union remedies. The Eighth Circuit rule on failure to exhaust internal union remedies is clear. In *Neal v. System Board of Adjustment,* 348 F.2d 722 (8th Cir. 1965), the Court of Appeals held that a plaintiff must exhaust all of the union's available internal remedies, or show an adequate reason for his failure to do so. That rule was recently reaffirmed by the Eighth Circuit in *Rainey v. Missouri Utilities Co. Local Union 702 of the IBEW et al.,* 596 F.2d 310 (1979), where the Court of Appeals held that summary judgment in favor of both the union and the employer is required when a plaintiff in a suit of this kind has failed to exhaust all of the union's available internal remedies, and has failed to show any reason for his failure to do so.

Accordingly, this Court holds that Neiger's failure to exhaust his available internal union remedies, or to show (or at least allege) some reason for his failure to do so, requires that this Court grant summary judgment in favor of all defendants on Counts I and III of Neiger's complaint.

■ There is an additional ground urged by defendant Sheet Metal Workers Interna-

tional AFL–CIO in its motion for summary judgment. Neiger's theory of liability against the International is that it so controls the activities of the local union of which Neiger was a member that the local is a mere agent of the International and that the International is, therefore, responsible for the actions of the local. It is, however, uncontradicted that the International was not a signatory to the collective bargaining agreement with Neiger's employer. Moreover, it is also uncontradicted that the International did not take part, in any way, in Local 146's decision to request Neiger's discharge. The record in this case clearly shows that Local 146, not the International, was Neiger's *exclusive* bargaining agent. Since exclusive representation status is a necessary prerequisite to a statutory duty to represent fairly, *Kuhn v. Nat'l Assoc. of Letter Carriers Branch 5, et al.,* 528 F.2d 767, 770 (8th Cir. 1976), and since it is uncontradicted that the International was not Neiger's exclusive bargaining representative, this Court concludes that the International is entitled to judgment as a matter of law on Neiger's claim of breach of duty of fair representation.

For the several reasons set forth above, summary judgment on Counts I and III of Neiger's complaint will be granted in favor of all defendants. This leaves Count II of Neiger's complaint, which is a count against the Company based upon the Missouri service letter statute. Count II was removed to this Court on the theory that, although no independent jurisdictional basis for the claim existed, this Court could exercise its pendent jurisdiction over the claim. Since Counts I and III were based upon the same set of facts as Count II, and since Counts I and III were properly before the Court, the exercise of pendent jurisdiction over Count II seemed judicially efficient. Now that Counts I and III are no longer before this Court, however, the question arises whether this Court should continue to exercise jurisdiction over a claim for which no independent jurisdictional basis exists.

In *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966) (hereinafter *Gibbs*), the Court offered guidance on this question. It

stated, "Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surerfooted reading of applicable law. Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well." 383 U.S. at 726, 86 S.Ct. at 1139. Upon consideration of the Supreme Court's pronouncement in *Gibbs, supra,* and the Eighth Circuit's guidelines in *Kuhn v. National Association of Letter Carriers, Branch 5, et al.,* 528 F.2d 767, 771 n.6 (1976), this Court concludes that Neiger's Count II should be remanded to the State Circuit Court from which this case was removed.

For the reasons set forth above, and for the additional reasons set forth in defendants' motions for summary judgment, it is

ORDERED that defendants' respective motions for summary judgment be, and the same hereby are, granted; and it is

ORDERED that the Clerk of Court enter judgment in favor of all defendants on Counts I and III; and it is

ORDERED that Count II of Neiger's complaint be, and the same hereby is, remanded to the Circuit Court of Greene County for all further proceedings.