Danny HOLDER, Plaintiff,

v.

PET BAKERY DIVISION, I.C. INDUS-
TRIES, INC., Defendant.

Civ. A. No. C82–347R.

United States District Court,
N.D. Georgia,
Rome Division.

Dec. 20, 1982.

James A. Robbins, Jr., Rome, Ga., for
plaintiff.

Michael C. Towers and R. Patrick White,
Atlanta, Ga., for defendant.

## ORDER

HAROLD L. MURPHY, District Judge.

Danny Holder brought this civil action in
the Superior Court for Floyd County, Geor-
gia, alleging that he was discharged from
his job with defendant in violation of a
contract between defendant and plaintiff as
a member of Bakers Local Union No. 25, a
subordinate of the Bakery and Confection-
ary Workers' International Union, AFL–
CIO. He sought compensatory damages of
$45,000 and $250,000 in exemplary damages.
Defendant removed the action to this
Court. Before the Court are Holder's mo-
tion to remand the action to state court and
defendant's motions to dismiss the original
and amended complaints.[1]

Since plaintiff's motion to remand (or as
filed, "response to petition for removal")
questions the Court's jurisdiction in this
controversy, the Court must endeavor to
ascertain whether the Superior Court law-
suit was removed properly.

In brief, under the federal removal stat-
ute, 28 U.S.C. § 1441, any state civil action

1. Defendant also moves to amend the style of
the case to indicate its proper legal name as
"Pet Incorporated, Bakery Division." The mo-
tion is GRANTED.

founded on a federal claim or right, that is within a district court's original jurisdiction, may be removed by the defendant, unless Congress has provided otherwise.[2] Although not denominated as such, plaintiff's complaint alleges a cause of action under § 301 of the Labor Management Relations Act (Taft-Hartley Act), 29 U.S.C. § 185(a), which provides:

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organization, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

In its removal petition, defendant alleges that it is an employer whose employees are in an industry affecting interstate commerce and whose activities affect interstate commerce within the meaning of 29 U.S.C. § 152(2) (§ 2(2) of the National Labor Relations Act). Since plaintiff's complaint on its face concerns a contract entered into by the employer (defendant) and the union, as collective bargaining agent on behalf of employees (including plaintiff), § 301 of the LMRA governs this case.

Although there is concurrent federal and state court jurisdiction under § 301, *Charles Dowd Box Company v. Courtney,* 368 U.S. 502, 513, 82 S.Ct. 519, 525, 7 L.Ed.2d 483 (1962), the substantive law to be applied in adjudicating the rights of the parties is federal law, to be fashioned from the policy of our national labor law. *Textile Workers Union of America v. Lincoln Mills of Alabama,* 353 U.S. 448, 456, 77 S.Ct. 912, 917, 1 L.Ed.2d 972 (1957). Accordingly, an action brought pursuant to § 301 is governed by federal law, though it is brought in state court. *Humphrey v. Moore,* 375 U.S. 335, 344, 84 S.Ct. 363, 369, 11 L.Ed.2d 370 (1964). *See e.g., Smith v. Evening News Association,* 371 U.S. 195, 199, 83 S.Ct. 267, 269, 9 L.Ed.2d 246 (1962) ("Congress has directed the Court to formulate and apply federal law to suits for violation of collective bargaining contracts.")

■ It therefore is apparent that this present § 301 action, founded upon federal law, was removable to this Court. *Vaca v. Sipes,* 386 U.S. 171, 183, 87 S.Ct. 903, 913, 17 L.Ed.2d 842 (1967). *See also Avco Corporation v. Aero Lodge No. 735,* 390 U.S. 557, 560, 88 S.Ct. 1235, 1237, 20 L.Ed.2d 126 (1968) (collective bargaining agreement claim arises under "laws of the United States," within original jurisdiction of the federal courts, and therefore was removable under §§ 1441(a) and (b)); *Sheeran v. General Electric Company,* 593 F.2d 93, 96 (9th Cir.1979); *Neiger v. Sheet Metal Workers,* 470 F.Supp. 622, 627 (W.D.Mo.1979); *Leonardis v. Local 282 Pension Trust Fund,* 391 F.Supp. 554 (E.D.N.Y.1975); *Crawford v. Pittsburgh-Des Moines Steel Company,* 386 F.Supp. 290 (D.Wyo.1974); *Kinnunen v. American Motors Corporation,* 56 F.R.D. 102 (E.D.Wis.1972); *Lang v. American Motors Corporation,* 254 F.Supp. 892 (E.D.Wis. 1966); *Patriot-News Company v. Harrisburg Printing Pressmen,* 191 F.Supp. 568 (M.D.Pa.1961); *Swift & Company v. United Packinghouse Workers,* 177 F.Supp. 511 (D.Colo.1959).

Cases cited by plaintiff do not compel a different result. In *Fiolat v. Minnesota-Atlantic Transit Company,* 31 F.Supp. 219 (D.Minn.1940), there was an express provision prohibiting removal from state court. Moreover, *Billy Jack For Her, Inc. v. New*

---

2. Section 1441 provides, in pertinent part,

(a) Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending.

(b) Any civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States shall be removable without regard to the citizenship or residence of the parties. Any other such action shall be removable only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought.

*York Coat, Suit, Dress, Rainwear and Allied Workers' Union,* 511 F.Supp. 1180 (S.D.N.Y. 1981), did not involve a § 301 claim, but was an action in part to enjoin allegedly unlawful picketing. The union's federal constitutional defense did not transform the case into one involving a federal question. 1A Moore, FEDERAL PRACTICE AND PROCEDURE ¶ 0.160 at 185. *See also Henry v. First National Bank of Clarksdale,* 595 F.2d 291 (5th Cir.1979).

In addition, defendant is a corporation incorporated in Delaware, with its principal place of business in Missouri. Since plaintiff is a Georgia resident, and the prayer for relief exceeds $10,000 exclusive of costs and interest, the Court would have had original jurisdiction under 28 U.S.C. § 1332. The action thus was removable under § 1441(a).

Defendant filed two motions to dismiss. The first was predicated upon plaintiff's failure to exhaust the grievance procedure negotiated in the contract.[3] Although plaintiff argued that the language of Article X did not require mandatory use of the grievance procedure, the caselaw indicates a contrary conclusion. As the Supreme Court noted in *Republic Steel Corporation v. Maddox,* 379 U.S. 650, 658–659, 85 S.Ct. 614, 619, 13 L.Ed.2d 580 (1965):

> Use of the permissive "may" does not of itself reveal a clear understanding between the contracting parties that individual employees, unlike either the union or the employer, are free to avoid the contract procedure and its time limitations in favor of a judicial suit. *Any doubts must be resolved against such an interpretation.*

(emphasis supplied). *See also Clayton v. ITT Gilfillan,* 623 F.2d 563, 567 (9th Cir. 1980); *Soto Segarra v. Sea-Land Service,*

---

3. The grievance procedure, contained in the collective bargaining contract as Article X, provides as follows:

GRIEVANCE PROCEDURE

*Section 10.1.* All complaints, disputes or grievances arising between any employees or group of employees and the Company involving questions of interpretation or application of any of the provisions of this Agreement shall be adjusted in the following manner:

*Step 1.* Any employee may discuss a grievance with his immediate supervisor and he may, if he desires, be assisted in such discussion by a representative of the Union working for the Company or the Business Agent of Local Union.

*Step 2.* If the employee desires that the grievance be processed further, the grievance shall be reduced to writing by the party aggrieved within three (3) working days of the occurrence on which the grievance is based and submitted to the Grievance Committee which shall be composed of two employees of the Company appointed by the Union, and a copy of such grievance shall be furnished the Company. The Grievance Committee shall endeavor to adjust the grievance with the Plant Manager.

*Step 3.* If the matter cannot be satisfactorily adjusted under Step 2 within three (3) working days, then the Grievance Committee, a representative from the Union and the Plant Manager or other representative designated by the Company shall discuss the matter within the next twenty (20) days.

*Step 4.* In the event of failure to satisfactorily settle any grievance by the procedure outlined above, the grievance may be submitted by the Union to arbitration by giving notice in writing to the Company within five (5) days of the failure to agree in Step 3, of the desire to arbitrate within five (5) working days of such notice of desire to arbitrate, the Company and the Union shall jointly request the Federal Mediation and Conciliation Service to furnish each party an identical list of seven (7) names from its panel of arbitrators, who shall be members of the National Academy of Arbitrators. The parties shall, within ten (10) working days after receipt of such list, meet to select an arbitrator therefrom. The parties shall alternately strike a name from the list, with the party to strike the first being the Union. The person whose name remains on the list after each party has struck three (3) names shall serve as arbitrator. Following the selection of the arbitrator, the parties shall make arrangements with him to hear and decide the dispute without unreasonable delay. The arbitrator selected shall only have authority to interpret and apply the provisions of this Agreement and shall not have jurisdiction or authority to add to, subtract from, or alter in any way the provisions of the Agreement. His award shall be final and binding upon the Company, the Union, and all employees. The compensation and expenses of the arbitrator shall be shared equally by the Company and the Union.

*Section 10.2.* Any grievance not appealed to the next succeeding step in writing and within the time limits specified will be considered withdrawn by the Union.

*Section 10.3.* No grievance shall be processed in any step (including arbitration) if the aggrieved employee or employees have engaged in a strike.

*Inc.,* 581 F.2d 291, 294 (1st Cir.1978). *But see Grogg v. General Motors Corporation,* 444 F.Supp. 1215, 1222 (S.D.N.Y.1978).

■ However, *Maddox* is not dispositive, for in response to the initial motion, plaintiff filed an amended complaint,[4] alleging in essence his union's failure to process his grievance for him, and that this failure was arbitrary, discriminatory, and in bad faith. Such allegations, if proven, save plaintiff from a *Maddox*-type dismissal, for,

> As a general rule in cases to which federal law applies, federal labor policy requires that individual employees wishing to assert contract grievances must attempt use of the contract procedure agreed upon by his employer and union as the mode of redress. *If the union refuses to press or only perfunctorily presses the individual's claim, differences may arise as to the forms of redress then available.*

*Republic Steel Corporation v. Maddox, supra,* 379 U.S. at 652, 85 S.Ct. at 616. (citations and footnotes omitted) (emphasis supplied).

One different form of redress was discussed in *Vaca v. Sipes,* 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967). In *Vaca,* the court held that a wrongfully discharged employee could bring an action against the employer in the face of a defense based upon the failure to exhaust contractual remedies, provided the employee can prove that the union as bargaining agent breached its duty of fair representation in its handling of the employee's grievance. 386 U.S. at 186, 87 S.Ct. at 914. Moreover, *Vaca* provides that breach of this statutory duty of fair representation occurs only when a union's conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith. 386 U.S. at 190, 87 S.Ct. at 916.

In the face of the amended allegations, however, defendant moves to dismiss because plaintiff's union was not joined. Fed. R.Civ.P. 19(a) governs whether a person should be joined as a party to a lawsuit,

listing as determinative factors whether (1) complete relief can be accorded in his absence or (2) the absentee's interest in the lawsuit is such that failure to join him as a litigant impairs or impedes that interest, or exposes any existing party to double, multiple, or inconsistent liability.

■ Under these standards, the union need not be joined. The action involves a breach of contract, while a claim against the union involves breach of a statutory duty. If the contract is ambiguous, requiring the determination of the parties' intent, the Court can resolve the ambiguity without joining the union as a party. No impairment of the union's position or interest results from adjudication of plaintiff's and defendant's rights under the contract; although the Court has no control over how any judgment here is given claim or issue preclusion effect in any other tribunal, the union's absence in this case should not place upon it the yoke of res judicata or collateral estoppel. Nor would any judgment for a party, or a finding for or against the union, tend to expose either the parties or the union to multiple, inconsistent or double obligations. The central issue here is not the union's misconduct, but the employer's breach. In short, the determination of whether the union breached its statutory duty of fair representation, as a threshold matter to be resolved prior to consideration of plaintiff's claim against defendant, is merely another in a set of issues to be adjudicated in this lawsuit.

The cases support these conclusions. *Vaca v. Sipes* itself recognized that, in a § 301 action alleging wrongful discharge and where the contract procedures have not been exhausted, the Court is free to determine whether the employee is barred by the action of his union representative, and if not, to proceed with the case; or to facilitate the case, the employee may join the union as defendant; or, as in *Vaca,* the employee can sue the employer and the union in separate actions. *Vaca v. Sipes,*

---

4. Fed.R.Civ.P. 15(a) permits a party to amend his pleading as a matter of course at any time before a responsive pleading is served. Because of the removal petition and other motions, defendant has not answered Holder's complaint.

*supra,* 386 U.S. at 186–187, 87 S.Ct. at 914–915. In any event, the *Vaca* Court realized that courts would be compelled to pass upon whether there has been a breach of the duty of fair representation in the context of many § 301 breach-of-contract actions. *Id.* Nonetheless, the employer's breach of contract is the primary focus of the § 301 action, even if, as a preliminary matter, the breach of statutory duty by the union also must be resolved.[5]

Other courts have addressed the issue directly. In *Harris v. Chemical Leaman Tank Lines, Inc.,* 437 F.2d 167 (5th Cir. 1977), a class action was brought against the employer, who had entered into a collective bargaining agreement with plaintiffs' union. The suit sought to vacate a joint labor-management committee decision, and damages. The suit claimed that the union breached its duty by failing to take the issue to arbitration. The Fifth Circuit, in a *per curiam* decision, held that:

> The unions are not indispensable parties in a suit by an employee against the employer but may be sued separately for an alleged breach of duty. *Vaca v. Sipes,* 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967); *Serra v. Pepsi-Cola General Bottlers,* 248 F.Supp. 684 (D.C.Ill.1965). The complaint may not be dismissed on that basis.

437 F.2d at 170.

Moreover, in *Sandobal v. Armour and Company,* 429 F.2d 249 (8th Cir.1970), an ex-employee sued the employer for loss of wages and pension benefits regarding wrongful discharge from his job. The court held that neither prong of Fed.R.Civ.P. 19 was met, and as plaintiff sought only money damages from his employer, the union need not be joined. 429 F.2d at 257.[6]

In *Smart v. Ellis Trucking Company, Inc.,* 580 F.2d 215 (6th Cir.1978), the union was brought into a § 301 suit by way of amended complaint, but was dismissed because the limitations period on the claim had run. However, the employer was not entitled to dismissal due to the absence of the union, for as the court held, if the union's representation of the employee in fact had been fundamentally unfair, then the arbitral proceeding the employee was attacking was a nullity.

The fact that the plaintiff must show a flaw in the grievance process as a prerequisite to recovery does not alter the basic forms of the § 301 claim on the propriety of the discharge itself.

580 F.2d at 219. *See also Butler v. Local Union 823,* 514 F.2d 442, 447 (8th Cir.1975).

*Kaiser v. Local No. 83,* 577 F.2d 642 (9th Cir.1978) also held that neither an employer nor a union is an indispensable party in an action against the other by an employee-union member when the action against the employer is based on a violation of the terms of the collective bargaining agreement and the action against the union is based on the statutory duty of fair representation. 577 F.2d at 644.

In *Kaiser* the Ninth Circuit further noted that the cause of action against the employer is contractual, and the sole wrongdoer is the employer. In some cases, the employer may allege as a possible defense that the collective bargaining agreement was void or invalid or unenforceable. In that event, the employer may be required to join the union as a Rule 19 party. *Id.*

On the other hand, the *Kaiser* Court stated that a cause of action against the union is for breach of a statutory duty, in which the sole actor is the union. In such cases, the employer is not a participant, and need not be joined, unless it conspired with the union. *Id.*

The cases indicate that the union need not be joined in this action. *Gersbacher v.*

---

5. As the Supreme Court held in *Hines v. Anchor Motor Freight,* 424 U.S. 554, 96 S.Ct. 1048, 47 L.Ed.2d 231 (1976), the burden on employees in a § 301 suit remains substantial. "To prevail against either the company or the union, [the employees] must not only show that their discharge was contrary to the contract but must also carry the burden of demonstrat-

ing breach of duty by the union . . ., involv[ing] more than demonstrating mere errors in judgment." 424 U.S. at 570, 96 S.Ct. at 1059.

6. *Sandobal* also held that whether there was exhaustion of contract grievance procedures, and if not, the justification for so doing, were questions of fact. *Id.*

*Commercial Carriers, Inc.,* 91 F.R.D. 533 (E.D.Mich.1981) is not persuasive. In *Gersbacher,* the employee sued the employer for breach of the collective bargaining contract, and sought reinstatement, lost wages, and restoration of seniority rights. Although no relief was sought against the union (even though the breach of fair representation duty was asserted), the court ordered the union's joinder. The complaint alleged that the employer *and* the union acted in concert to undermine the arbitration process and engaged in conduct to harm plaintiff. Moreover, restoration of seniority rights involved an intricate role of the union. Certainly this case does not resemble *Gersbacher,* since no concerted action is alleged nor anything but monetary damages sought. *See also Kinnunen v. American Motors Corporation,* 56 F.R.D. 102 (E.D.Wis. 1972) (since contract provisions upon which lawsuit was based concerned joint union-employer actions, union joined).

ACCORDINGLY, plaintiff's motion to remand is DENIED; defendant's motion to amend the style of the case to assert its legal name as "Pet Incorporated, Bakery Division" is GRANTED; defendant's first motion to dismiss, incorporated into its second motion to dismiss, and defendant's second motion to dismiss, are DENIED.

IT IS SO ORDERED, this the 20th day of December, 1982.