Vincent W. **FERRO**, Plaintiff,

v.

**ASSOCIATION OF CATHOLIC SCHOOLS, Roman Catholic Archdiocese of New York, Rev. Edward P. Hauck, St. Thomas of Canterbury Parish, St. Thomas of Canterbury School, Sr. Helen Robert Boyd, O.P. and Dominicans of Sparkill, Defendants.**

**No. 85 Civ. 2304 (RLC).**

United States District Court, S.D. New York.

Dec. 16, 1985.

**1162**

Francis E. Ferro, P.C., Milton, N.Y., for plaintiff.

Edward J. Burke, Clifton Budd Burke & Demaria, New York City (David F. Horan, Michele Costanza Horan, of counsel), for defendants.

## OPINION

ROBERT L. CARTER, District Judge.

Plaintiff brought this civil action in the Supreme Court of the State of New York, New York County in December, 1984, alleging wrongful discharge from his job with defendant St. Thomas of Canterbury School ["St. Thomas"] in violation of a contract between this defendant and plaintiff. Plaintiff sought $975,000 in compensatory damages, $975,000 in exemplary damages for alleged tortious interference with his employment contract, and $975,000 in consequential damages. On March 26, 1985, defendants removed this action to this court. Before the court are defendants' motion to stay the action pending arbitration, pursuant to an agreement to arbitrate and the Federal Arbitration Act, and plaintiff's cross-motion to remand the action to state court, pursuant to 28 U.S.C. § 1447(c), on the ground that it was improvidently removed to this court.

FACTS:

Plaintiff Vincent Ferro, a New York state-certified elementary school teacher, was employed for 15 years by defendant St. Thomas. On January 16, 1984, plaintiff was discharged as a result of alleged public statements that "severely interfered with the canonical, ecclesiastical and religious functions of the Association of Schools and its member school, St. Thomas of Canterbury" (*Supporting Affidavit on Cross-Motion to Remand to State Court*, Exhibit A). Defendant St. Thomas is a member of defendant Association of Catholic Schools ["Association"], an unincorporated educational association, organized and existing under the laws of New York. Defendant Association and the Federation of Catholic Teachers ["Federation"], a labor organization and the exclusive bargaining representative of teachers at St. Thomas, are parties to a collective bargaining agreement governing the terms and conditions of teachers' employment in a unit that includes St. Thomas. Each year of plaintiff's employment, he executed an "Annual Agreement of Employment" which made reference to a collective bargaining agreement between Association and Federation [1]. (*Plaintiff's Supporting Affidavit on Cross-Motion to Remand to State Court*, ¶ IV; *Burke Affidavit*, Exhibit B at 77).

The collective bargaining agreement in effect at the time of plaintiff's discharge contains a grievance and arbitration provision which states the parties' intent to arbitrate disputes that arise under the agreement, (*Burke Affidavit*, Exhibit A, Collective Bargaining Agreement, Art. V), includ-

---

1. The collective bargaining agreement, which provides for arbitration of disputes, was an integral and mutually binding part of plaintiff's employment arrangement with Association as Article VI of the collective bargaining agreement provides that a copy of the agreement in effect between the Federation and the Association should be given to the teacher prior to the teacher's signing the Annual Agreement of Employment Contract (*Burke Affidavit*, Exhibit A, Article VI; Exhibit B, Contract). Thus, the duty to arbitrate disputes—although exercizable only by the teachers' union and not by individual teachers—is binding on plaintiff by virtue of his employment contract. Whether plaintiff is asserting a breach of contract claim, or whether plaintiff is asserting rights that are subject to arbitration under the collective bargaining agreement is not decisive to the court's determination of its jurisdiction over this case.

ing those disputes that involve canonical, ecclesiastical or religious questions. (*Burke Affidavit*, Exhibit A at 77). Hence, the Federation's sole method of contesting a decision by the Association or Archdiocese involving these types of questions is an appeal to the Archdiocesan Committee on Due Process. Any decision reached by the Archdiocesan Committee on Due Process is final and binding on the parties to the agreement. Defendants assert that the decision to discharge plaintiff involved questions of Roman Catholic Church doctrine. (*Memorandum of Law in Support of Defendant's Motion to Stay Action Pursuant to Agreement to Arbitrate*, at 3). Thus, defendants argue that the Archdiocesan Committee is the only appropriate forum to determine the legitimacy of plaintiff's termination. Following his discharge, plaintiff and the Federation requested a hearing before the Archdiocesan Committee. Plaintiff, instead of appearing at the scheduled arbitration, filed suit in New York State Supreme Court. Removal to this court followed.

DISCUSSION:

According to 28 U.S.C. § 1447(c), "If at any time before final judgment it appears the case was removed improvidently and without jurisdiction, the district court shall remand the case, and may order the payment of just costs." Under the federal removal statute, 28 U.S.C. § 1441(a), a defendant in a state court civil action founded on a federal claim of right, i.e. within a district court's original jurisdiction, may remove the action to federal court unless Congress has provided otherwise.[2] Plaintiff contends that the present action is not one over which the federal district courts have original subject matter jurisdiction because plaintiff's original and amended complaint are pleaded solely in terms of state law, "advancing common law claims ex contractu and ex delicto." (*Plaintiff's Supporting Affidavit on Cross-Motion to Remand to State Court*, ¶ IX).

Although plaintiff characterizes his claim as a state law cause of action, defendants argue that this cause of action falls within the original "federal question" jurisdiction of United States' district courts, i.e. "aris[es] under" the laws of the United States within the meaning of 28 U.S.C. § 1331[3] and thus was properly removed as an action under the "laws of the United States" within the meaning of 28 U.S.C. § 1441(b). In support of this contention, defendants allege three possible bases of federal question jurisdiction: plaintiff's complaint avers facts that state a claim under § 301 of the Labor Managment Relations Act, ["LMRA"], 29 U.S.C. § 185(a), defendants in discharging plaintiff "exercised rights [sic] guaranteed by the Constitution of the United States," (*Memorandum of Law in Support of Defendant's Motion to Stay Action Pursuant to Agreement to Arbitrate* at 1), and the arbitration clause contained in the collective bargaining agreement governing plaintiff's employment contract is enforceable through the Federal Arbitration Act, 9 U.S.C. § 3. (*Defendant's Notice of Motion For Stay of Action Pursuant to Agreement to Arbitrate and Federal Arbitration Act*).

The general rule regarding removal of a non-diversity action to federal court is that on the face of the complaint

---

**2.** Section 1441 provides, in pertinent part,

(a) Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending.

(b) Any civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States shall be removable without regard to the citizenship or residence of the parties. Any other such action shall be removable only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought.

**3.** Section 1331 provides, in pertinent part,

The district courts shall have jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.

there must exist a federal question. *See Phillips Petroleum Co. v. Texaco Inc.,* 415 U.S. 125, 127–28, 94 S.Ct. 1002, 1003–04, 39 L.Ed.2d 209 (1974) *(per curiam ); Gully v. First National Bank,* 299 U.S. 109, 113, 57 S.Ct. 96, 97, 81 L.Ed. 70 (1936) (both holding that an action generally does not "aris[e] under" federal law for removal purposes unless the existence of a federal question appears on the face of the complaint). However, contrary to plaintiff's assertion, courts have frequently found removal proper on an "arising under" theory, despite the fact that the complaint fails to mention any federal law. *Holder v. Pet Bakery Div., I.C. Industries, Inc.,* 558 F.Supp. 287, 288 (N.D.Ga.1982) (Murphy, J.) (plaintiff's complaint for wrongful discharge, although not denominated as such, alleged a cause of action under LMRA); *Alameda Room, Inc. v. Pitta,* 538 F.Supp. 1072 (S.D.N.Y.1982) (Ward, J.) (claim was properly removable as one arising under federal law even though employer's petition nowhere mentioned federal law, where state contract law relied on in petition had been preempted by federal law). Although plaintiff can restrict the complaint to a state law theory and proceed in state court without fear of removal to federal court when the facts of the case support both a federal and state law claim, *The Fair v. Kohler Die & Specialty Co.,* 228 U.S. 22, 23, 33 S.Ct. 410, 411, 57 L.Ed. 716 (1913), where the allegations of the complaint support only a federal claim, and not a state law claim as well, "arising under" removal is always proper, even where the complaint on its face relies exclusively on state law. *Federated Dept. Stores, Inc. v. Moitie,* 452 U.S. 394 n. 2, 101 S.Ct. 2424 n. 2, 69 L.Ed.2d 103 (1981).

■ This limited exception to the "face of the complaint rule" prevents plaintiffs from defeating removal by inadvertently, mistakenly, or fraudulently concealing the federal question that would necessarily have appeared if the complaint had been well-pleaded. 1A *Moore's Federal Practice* ¶ 0.160 at 185–87 (2d ed. 1981). One result of this exception to the well-pleaded complaint rule is that "arising under" re-moval is proper, even when the complaint relies solely on state law, if the state law relied upon by the plaintiff has been preempted by federal law, i.e. where federal law, by definition, provides the only possible legal basis for the relief sought by plaintiff. *North American Phillips Corp. v. Emery Air Freight Corp.,* 579 F.2d 229, 233–34 (2d Cir.1978); *Alameda, supra; Palm Beach Co. v. Journeymen's & Production Allied Services Local 157,* 519 F.Supp. 705, 708 (S.D.N.Y.1981) (Ward, J.).

■ Plaintiff Ferro's amended complaint relies solely on New York contract law as the substantive basis for relief. Defendants' primary argument is that the complaint states an action under § 301 of the LMRA and that this statute preempts state law in the enforcement of the collective bargaining agreement at issue despite plaintiff's failure to allege a § 301 cause of action in the complaint. The United States Supreme Court has held that a plaintiff may not defeat removal by omitting to plead necessary federal labor law questions in a complaint. *See Avco Corp. v. Aero Lodge No. 735, Int'l Assn. of Machinists,* 376 F.2d 337, 340 (6th Cir.1967), *aff'd,* 390 U.S. 557, 88 S.Ct. 1235, 20 L.Ed.2d 126 (1968) ("State law does not exist as an independent source of private rights to enforce collective bargaining contracts [in an industry affecting interstate commerce]. While state courts may have concurrent jurisdiction, they are bound to apply federal law ... *the force of federal preemption in this area of labor law cannot be avoided by failing to mention § 301 in the complaint.*") (emphasis supplied); *Local 174, Teamsters, Etc. v. Lucas Flour Co.,* 369 U.S. 95, 104, 82 S.Ct. 571, 577, 7 L.Ed.2d 593 (1962) ("The ordering and adjusting of competing interests through a process of free and voluntary collective bargaining is the keystone of the federal scheme to promote industrial peace. State law which frustrates the effort of Congress to stimulate the smooth functioning of that process thus strikes at the very core of federal labor policy").

The federal preemption doctrine espoused in *Avco* and *Lucas Flour, supra,* is not applicable here. Plaintiff has not eschewed reliance on the LMRA in favor of an alternate state provision which has been preempted by federal labor law. Although the collective bargaining agreement between Association and Federation was an integral and mutually binding part of plaintiff's employment arrangement with St. Thomas, plaintiff's wrongful discharge claim could not have been brought pursuant to § 301 of the LMRA, which provides a mechanism by which an employee may sue in federal court to enforce a collective bargaining agreement. In *NLRB v. Catholic Bishop of Chicago,* 440 U.S. 490, 99 S.Ct. 1313, 59 L.Ed.2d 533 (1979), the United States Supreme Court held that parochial school teachers are not within the coverage of the National Labor Relations Act ["NLRA"] since Congress failed to express a clear affirmative intention to extend coverage of the NLRA to teachers in church-operated schools. Thus, in *Catholic High School Association of Archdiocese of New York v. Culvert,* 753 F.2d 1161, 1171 (2d Cir.1985), this Circuit, noting that the NLRA is non-applicable to parochial schools, held that the NLRA did not preempt the New York State Labor Relations Board's jurisdiction over labor relations between parochial schools and their lay teachers.[4]

St. Thomas is a "church-operated" school within the meaning of *Catholic Bishop.* The preamble to the collective bargaining agreement between Association and the Federation states:

> The Union and its members recognize the uniqueness of the Association and its member schools in that it is a Roman Catholic school system committed to provide education within the framework of Catholic principles.

(*Burke Affidavit,* Exhibit A at 2). Furthermore, a rider to the collective bargaining agreement between the Association and the Federation states:

> [N]othing in said collective bargaining agreement shall be construed as interfering in any way with the Superintendent of Schools of the Archdiocese of New York or of the officers or directors of the Association in carrying out their functions and duties that are canonical, ecclesiastical or religious in nature.

(*Burke Affidavit,* Exhibit B at 77). Hence, the holding in *Catholic Bishop* —that the NLRA does not cover parochial school teachers—applies to the instant case; therefore, whatever claims plaintiff asserts under New York contract or New York labor law are neither covered nor preempted by federal law.[5]

As an alternative basis for this court's jurisdiction pursuant to 28 U.S.C. § 1331, defendants make a vague allegation that "defendants in discharging plaintiff exercised rights [sic] guaranteed by the Constitution of the United States" (Defendants' *Memorandum of Law in Support of Motion To Stay Action Pursuant to Agreement to Arbitrate*). Apparently defendants are attempting to assert First

---

4. The New York State Labor Relations Board administers the New York State Labor Relations Act which was amended in 1968 to apply to employees of charitable, educational or religious associations and corporations. In *Catholic High School Association of Archdiocese of New York v. Culvert,* 753 F.2d 1161, 1171 (2d Cir.1985), the Second Circuit decided the First Amendment issues left unresolved by the Supreme Court in *NLRB v. Catholic Bishop,* 440 U.S. 490, 99 S.Ct. 1313, 59 L.Ed.2d 533 (1979), which was decided on federal statutory grounds, and held that the First Amendment did not prohibit a state labor relations board from exercising jurisdiction over labor relations between parochial schools and their lay teachers.

5. The NLRA, as amended by the LMRA of 1947 —the Taft-Hartley Act—comprises Title I of the LMRA. The employers, employees, and labor unions covered by the LMRA are set forth in Section 2 of Title I, the amended NLRA. Hence, the Supreme Court holding that Congress did not intend parochial schools to be covered by the NLRA, also applies to § 301 of the LMRA, which provides a mechanism whereby an employee may sue in federal court to enforce, as a matter of federal law, a collective bargaining agreement negotiated pursuant to the practices and procedures of collective bargaining set out in the NLRA.

Amendment claims.[6] That attempt cannot succeed. An action may not be removed on the basis of a defense brought under federal law, even if both parties admit that the defense is the only thing truly at issue. *Franchise Tax Board of California v. Construction Laborers Vacation Trust for Southern California*, 463 U.S. 1, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983); *Louisville & Nashville R. Co. v. Mottley*, 211 U.S. 149, 29 S.Ct. 42, 53 L.Ed. 126 (1908).

■ A third asserted basis for removal is defendants' claim that the employment contract is covered by the Federal Arbitration Act, 9 U.S.C. § 1, *et seq.* If applicable, the Federal Arbitration Act would provide an alternate basis for jurisdiction in this court.[7]

The Federal Arbitration Act applies to a provision in "a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract" 9 U.S.C. § 2. The Act provides that arbitration agreements within its scope "shall be valid, irrevocable, and enforceable," 9 U.S.C. § 2; and that upon application of a party not in default in proceeding with arbitration, the court "shall stay the trial of the action until arbitration is had in accordance with the terms of the parties' agreement." 9 U.S.C. § 3.

■ At the outset, the court is confronted with plaintiff's assertion that although his employment contract made reference to the collective bargaining agreement containing the arbitration clause, plaintiff did not join the Federation until after his discharge, and thus the collective bargaining agreement should not be binding upon him. The court rejects plaintiff's disavowal of the collective bargaining agreement. Regardless of plaintiff's membership in the union, he was a member of the collective bargaining unit on whose behalf the Federation engaged in collective bargaining. A union owes a duty to represent fairly all members of the collective bargaining unit, *Vaca v. Sipes*, 386 U.S. 171, 177, 87 S.Ct. 903, 909, 17 L.Ed.2d 842 (1967); *Ford Motor Co. v. Huffman*, 345 U.S. 330, 338, 73 S.Ct. 681, 686, 97 L.Ed. 1048 (1953), whether or not they are union members, *Textile Workers v. Lincoln Mills*, 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957); this duty applies to the initial negotiation of a collective bargaining agreement, *Huffman*, 345 U.S. at 337–39, 73 S.Ct. at 685–87, and to the subsequent enforcement of the contract for the employees' benefit. *Vaca*, 386 U.S. at 177, 87 S.Ct. at 909.

■ Defendants assert that the Federal Arbitration Act requires this court to stay the trial of an action, upon the application of a party, if the court is satisfied that "at

**6.** The hallmark of a violation of the free exercise clause is the presence of coercion by the state. *School District of Abington v. Schempp*, 374 U.S. 203, 223, 83 S.Ct. 1560, 1572, 10 L.Ed.2d 844 (1963); *Engel v. Vitale*, 370 U.S. 421, 430, 82 S.Ct. 1261, 1266, 8 L.Ed.2d 601 (1962). The instant case posits plaintiff, a private citizen, bringing a wrongful discharge action against a religious school and association. This is not a case where a state agency is burdening religion by penalizing particular hiring practices with respect to an individual employed to provide religious instruction and act as a religious role model.

**7.** Plaintiff asserts that defendants' aim in removing this action to this court is to employ the Federal Arbitration Act to compel arbitration— which plaintiff admits would be binding and executed before a church tribunal. Yet, if the employment contract at issue falls within the definition of contracts covered by the Federal

Arbitration Act, (i.e. a contract involving interstate commerce or a maritime transaction), defendants have a right to enforce the arbitration clause, pursuant to the Federal Arbitration Act, *regardless of the particular forum in which it is asserted, since the Federal Arbitration Act is not limited to disputes subject only to federal court jurisdiction.* See *Southland Corp. v. Keating*, 465 U.S. 1, 104 S.Ct. 852, 861, 79 L.Ed.2d 1 (1984) (United States Supreme Court rejected the interpretation of the Federal Arbitration Act as a mere procedural statute, applicable only in federal courts, holding that "in creating a substantive rule applicable in state as well as federal courts, Congress intended to foreclose state legislative attempts to undercut the enforceability of arbitration agreements"); *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983) (Federal Arbitration Act "creates a body of federal substantive law").

least one of the issues in this suit is within the scope of the relevant arbitration clause." (*Memorandum of Law in Support of Defendants' Motion to Stay Action Pursuant to Agreement to Arbitrate*). The Federal Arbitration Act applies only to maritime transactions and transactions involving interstate or foreign commerce. The employment contract between plaintiff and defendants is not a maritime contract and does not appear to be a "transaction involving commerce," [8] and thus is not within the scope of Section 3 of the Act.[9]

Accordingly, this federal jurisdiction is lacking. The case was improvidently removed within the meaning of 28 U.S.C. § 1447(c).

Plaintiff's cross-motion to remand this case to the New York State Supreme Court is granted; defendants' motion to stay the action pending arbitration is denied. Plaintiff is to recover his costs as well as attorneys' fees in connection with the proceedings in this court.

IT IS SO ORDERED.

---

**8.** "Commerce" as set forth in § 1 of the Federal Arbitration Act means "commerce among the several states."

**9.** *See Bernhardt v. Polygraphic Co. of America, Inc.,* 350 U.S. 198 at 200–01, 76 S.Ct. 273 at 274–75, 100 L.Ed. 199 (1956) (in a damage action for wrongful dismissal under an employment contract, Court held that the Federal Arbitration Act did not apply to the contract's arbitration clause since there was "no showing that petitioner while performing his duties under the employment contract was working 'in' commerce, was producing goods for commerce, or was engaging in activity that affected commerce"); *Prima Paint Corp. v. Flood & Conklin Manufacturing Corp.,* 388 U.S. 395, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967) (agreement was a transaction in "commerce" within United States Arbitration Act where defendant sold paint business, serving at least 175 wholesale clients in a number of states, and plaintiff secured defendant's assistance in arranging transfer of manufacturing and selling operations from New Jersey to Maryland, with defendant to render consultation services).