**Marie CIRELLI, Plaintiff,**

v.

**TOWN OF JOHNSTON SCHOOL DISTRICT, Brian G. Abdallah, In His Capacity as Principal of Johnston Senior High School, Mary Ann Carroll, In Her Capacity as Superintendent of Schools, Johnston School District, and Robert Plante, In His Capacity as Administrative Assistant at Johnston High School, Defendants.**

**Civ. A. No. 95–0231 P.**

United States District Court, D. Rhode Island.

June 13, 1995.

14

Marc Gursky, Fidelma Fitzpatrick, Providence, RI, for plaintiff.

Stephen M. Robinson, Asquith, Mahoney & Robinson, Providence, RI, for defendants.

*MEMORANDUM AND ORDER*

PETTINE, Senior District Judge.

This is a § 1983 action alleging violation of plaintiff's First Amendment rights. Plaintiff is an art teacher at Johnston High School and a member of the Johnston Federation of Teachers, American Federation of Teachers, AFL–CIO Local 1702. According to the verified complaint, Plaintiff videotaped violations of the Rhode Island Health and Safety Code at the High School after repeated attempts to get school officials to rectify the health and safety problems. Defendants instructed plaintiff to "cease and desist" from using her video camera to document the problems on the property. She was also instructed not to release the video to anyone without permission of school officials.

Plaintiff moves this Court to issue a temporary restraining order ("TRO") enjoining the defendants from violating plaintiff's First Amendment rights. More specifically, plaintiff asks that this Court enjoin defendants from denying plaintiff access to Johnson High School property in order to document with a video camera numerous violations of the Rhode Island Occupational Health and Safety Code. Plaintiff further asks the Court to enjoin defendants from interfering with or restricting the release of such videotapes by the plaintiff.

Defendants move this Court for a stay of proceedings pursuant to the American Federation of Teachers' collective bargaining agreement and the Federal Arbitration Act or, in the alternative, to dismiss the action for failure to state a claim.

For the following reasons, plaintiff's Motion for a Temporary Restraining Order is GRANTED and defendants' Motion to Stay or Dismiss is DENIED.

I.

Plaintiff accurately notes that the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* ("the FAA" or "the Act") does not apply to the collective bargaining agreement at issue. The FAA applies only to "maritime transaction[s] or contract[s] evidencing a transaction involving commerce." 9 U.S.C. § 2. *See also Bernhardt v. Polygraphic Co. of Amer-*

*ica,* 350 U.S. 198, 201–02, 76 S.Ct. 273, 275–76, 100 L.Ed. 199 (1956). The Contractual Agreement entered into by the plaintiff falls under neither of these categories, and is therefore not governed by the Act. *See, e.g., Ferro v. Ass'n of Catholic Schools,* 623 F.Supp. 1161, 1167 (S.D.N.Y.1985) (parochial school teacher's employment contract not within the scope of Section 3 of the FAA because it is neither a maritime contract nor a "transaction involving commerce").

Because the agreement to arbitrate is not governed by the FAA, the "federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act," does not apply. *Moses H. Cone Memorial Hospital v. Mercury Constr. Corp.,* 460 U.S. 1, 24, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983). Therefore, none of the presumptions involving the liberal federal policy favoring arbitration are implicated. As such, a district court is not bound by the requirement of Section 3 of the Act to stay district court proceedings pending the outcome of arbitration. 9 U.S.C. § 3.

■ This is not to suggest, however, that the parties may not agree to arbitrate their disputes, but only that the provisions of the FAA are not applicable to these agreements. *Int'l Union v. Colonial Hardwood Flooring Co.,* 168 F.2d 33, 35 (4th Cir.1948). *See, e.g., Domino Sugar Corp. v. Sugar Workers Local 392,* 10 F.3d 1064, 1068 (4th Cir.1993) (affirming district court's ruling that although not governed by the FAA, the collective bargaining agreement required the employer to submit its dispute to arbitration). However, in a case involving a dispute over First Amendment rights, I do not believe that this Court is required to stay its proceedings in deference to arbitration. First, even if the FAA's strong policy favoring arbitration were to apply to the instant action, it is questionable whether a statutory right involving the First Amendment is appropriate

for arbitration at all. *Cf., McDonald v. City of West Branch,* 466 U.S. 284, 104 S.Ct. 1799, 80 L.Ed.2d 302 (1984) (prior arbitration not given preclusive effect in subsequent § 1983 action alleging violation of First Amendment rights). This is a particularly salient consideration where there may be tension between collective representation and individual statutory rights. *See Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20, 33–34, 111 S.Ct. 1647, 1655–56, 114 L.Ed.2d 26 (1991). This Court is in agreement with the proposition that in a § 1983 action alleging First Amendment violations, "an arbitration proceeding cannot provide an adequate substitute for a judicial trial." *McDonald,* 466 U.S. at 292, 104 S.Ct. at 1804. *But see Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth,* 473 U.S. 614, 628, 105 S.Ct. 3346, 3354–55, 87 L.Ed.2d 444 (1985) (having made the bargain to arbitrate, a party should be held to it unless Congress has evinced an intention to preclude a waiver of judicial remedies for the statutory rights at issue). Second, it is not entirely clear to this Court that the parties have in fact agreed to arbitrate such disputes.[1] In the absence of the mandate under the FAA that this court invoke the presumption of arbitrability requiring that questions of construction of the scope of an arbitration clause be construed in favor of arbitration, *see United Steelworkers of America v. Warrior and Gulf Navigation Co.,* 363 U.S. 574, 582–83, 80 S.Ct. 1347, 1352–53, 4 L.Ed.2d 1409 (1960), I decline to find that this First Amendment dispute must be arbitrated under the Agreement's grievance procedure.

## II.

■ In order to warrant the issuance of a temporary restraining order, the party seeking the order must demonstrate "irreparable injury" pursuant to Fed.R.Civ.P. 65(b).

---

1. Pursuant to the terms of the Contractual Agreement between the Johnston School Committee and the Johnston Federation of Teachers, grievances are subject to arbitration. The definition of grievance is set forth in Article II, Section 1:
   A "grievance" shall mean a written complaint by the Federation or by a teacher and the Federation that there has been a violation,

misinterpretation, or inequitable application of any of the provisions of this Agreement, or that a member of the bargaining unit has been treated unfairly or inequitably or discriminated against for any reason.
*See* Mem. of Law in Support of Defs.' Mot. to Stay or Dismiss at 3.

Plaintiff has fulfilled this requirement by demonstrating that her First Amendment rights have very likely been violated.[2] While this circuit has gone so far as to say that "the fact that [plaintiff] is asserting First Amendment rights does not *automatically* require a finding of irreparable injury," *Rushia v. Town of Ashburnham*, 701 F.2d 7, 10 (1st Cir.1983) (emphasis added), this circuit has also noted that "even a temporary restraint on expression may constitute irreparable injury." *In the Matter of Providence Journal Co.*, 820 F.2d 1342, 1353 (1st Cir.1986) (citations omitted). Unlike in *Rushia*, where federalism concerns involving a state's right to enforce its criminal laws were at issue, there are no countervailing policy reasons in this case for disturbing the Supreme Court's weighty statement that "[t]he loss of First Amendment Freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373, 96 S.Ct. 2673, 2690, 49 L.Ed.2d 547 (1976).

**2.** While this ruling does not represent an adjudication of the merits of plaintiff's First Amendment claims, I feel constrained to note that existing case law in both the Supreme Court and this circuit appear to support plaintiff's position, particularly where plaintiff is seeking to "comment" on existing conditions in the school already determined, according to plaintiff's verified complaint, to be safety violations by the Rhode Island Department of Labor, Department of Occupational Safety. *See Pickering v. Board of Educ.*, 391 U.S. 563, 568, 88 S.Ct. 1731, 1734, 20 L.Ed.2d 811 (balancing the interests of the teacher, as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees); *Brasslett v. Cota*, 761 F.2d 827, 839 (1st Cir.1985) (an employee's interest in making public statements is heightened when the statements are true and the speech does not impair the state's functions). I am hard pressed to imagine what function of the school would be impaired by public exposure of the existing safety violations at the school, where the function of the school presumably includes the commitment to provide a safe learning environment.

Defendants' citation of *D'Amario v. Providence Civic Center*, 639 F.Supp. 1538 (D.R.I.1986), *aff'd*, 815 F.2d 692 (1st Cir.), *cert. denied*, 484 U.S. 859, 108 S.Ct. 172, 98 L.Ed.2d 125 (1987) is inapposite. As plaintiff notes:

In *D'Amario*, Plaintiff D'Amario, a freelance photo journalist sought access to the Providence Civic Center so he could photograph performers and then sell the pictures for profit. D'Amario challenged an agreement between the Civic Center and the performers that prohibited the Center from allowing anyone to take pictures during a performance. D'Amario's sole claim for relief was under a First Amendment *right of access* argument, i.e. whether he could be physically barred from entering the Civic Center to take photographs.

Pl.'s Opp. to Defs.' Mot. to Dismiss at 5–6 (emphasis added). The court found that D'Amario's First Amendment right to freedom of *speech* was not directly implicated because the activity in which D'Amario sought to engage was pure conduct. Specifically, D'Amario wished to "do" something: enter the Civic Center and photograph the performers. The court distinguished this situation from an activity which "partake[s] of the attributes of expression.... This is not a case where the plaintiff desires to 'express' himself by displaying the existing fruits of his photographic endeavors." *D'Amario*, 639 F.Supp. at 1541. Nevertheless, the court balanced the media's right to gather information with the state's interest in limiting that right, finding that:

"[although the press cannot command access wherever, whenever, and however it pleases, neither can government arbitrarily shroud genuinely newsworthy events in secrecy.... [I]f the First Amendment is to retain a reasonable degree of vitality, the limitations upon access must serve a legitimate governmental purpose, must be rationally related to the accomplishment of that purpose, and must outweigh the systemic benefits inherent in unrestricted (or lesser-restricted) access."

*D'Amario*, 639 F.Supp. at 1543. The court held that the Civic Center's interests in limiting access under its "no camera" rule outweighed plaintiff's interest in unlimited access.

In contrast, plaintiff Cirelli does not appear to be proceeding on a right of access claim, as she already has access to the Johnston High School as a teacher. The videotape has already been recorded; plaintiff now seeks to display the results to the public without incurring retaliation by the School Board. Without passing on the merits of the case, it is clear that plaintiff's First Amendment right to speech has been implicated in some measure.

Finally, this Court notes that even if *D'Amario* were to apply to the instant action, the balancing test is likely to tip in favor of the plaintiff. In *D'Amario*, the plaintiff's interest was purely commercial; plaintiff intended to sell the photographs. In contrast, plaintiff Cirelli's interest is in the safety and welfare of students and teachers who must spend their day in a building already found to be in violation of the Rhode Island Health and Safety Code. In addition, the state's interest in *D'Amario* is nonexistent in the instant action. There, the state's interest was essentially economical: in order to attract the performers, the Civic Center had to agree to a "no camera" policy. The rule also protected the individual property interests of the performers. Where the "business" of the school is to educate safely,

## III.

For the foregoing reasons, plaintiff's Motion for a Temporary Restraining Order is GRANTED and defendants' Motion to Stay or Dismiss is DENIED. The plaintiff will draft a Temporary Restraining Order in keeping with this Court's ruling which will be effective *nunc pro tunc* as of the date of this Memorandum and Order. The parties are instructed to confer and set a date for a preliminary injunction hearing. If the parties are unable to agree on a date, the court will assign this matter for hearing within ten days.

SO ORDERED:

---

there is no similar interest of the defendant's at stake here.