March 12, 2004

Mr. Benton Cocanougher
Interim Chancellor
The Texas A&M University System
A&M System Building, Suite 2043
200 Technology Way
College Station, Texas 77845

Opinion No. GA-0163

Re: Whether The Texas A&M University System
is authorized to administer charitable remainder
trusts (RQ-0110-GA)

Dear Mr. Cocanougher:

You ask whether The Texas A&M University System (the "A&M System") is authorized to administer charitable remainder trusts.

You inform us that the A&M System is considering administering charitable remainder trusts established to comply with section 664 of the Internal Revenue Code and Internal Revenue Service regulations.[1] As we understand these trusts, a donor irrevocably transfers assets to a charitable trust that is administered by a trustee. The donor may be eligible to take a charitable income tax deduction for the gift.[2] The trust pays income to the donor and/or other beneficiaries, at least one of which is not a charitable entity, for the lifetime of the noncharitable income beneficiaries or for a specific term. Upon termination of the trust (either upon the death of the noncharitable income beneficiaries or at the end of a term of years), the trustee distributes the amount remaining in the trust to one or more charitable entities or uses the trust for a charitable purpose. *See* Request Letter, *supra* note 1, at 1; I.R.C. § 664; *see generally* 34 AM. JUR. 2D *Federal Taxation* (2003) ¶¶ 19206-07. Section 664 of the Internal Revenue Code provides for two types of charitable remainder trusts: Charitable Remainder Annuity Trusts (CRATS), for which the income payment is a fixed amount that does not change from year to year,[3] and Charitable Remainder Unitrusts (CRUTS), for which

---

[1]*See* Letter from Delmar L. Cain, General Counsel, The Texas A&M University System, to Honorable Greg Abbott, Texas Attorney General (Sept. 16, 2003) (on file with the Opinion Committee) [hereinafter Request Letter].

[2]*See* I.R.C. § 170(f)(2)(A).

[3]Section 664 of the Internal Revenue Code provides that a charitable remainder annuity trust is a trust

> (A) from which a sum certain (which is not less than 5 percent nor more than 50 percent of the initial net fair market value of all property placed in trust) is to be paid, not less often than annually, to one or more persons (at least one of which is not an organization described in section 170(c) and, in the case of individuals, only to an individual who is living at the time of the creation of the trust) for a term of

(continued...)

the income payment is a fixed percentage of the trust assets' annual fair market value and thus changes each year depending on the trust's market value.[4]

---

[3](...continued)
years (not in excess of 20 years) or for the life or lives of such individual or individuals,

(B) from which no amount other than the payments described in subparagraph (A) and other than qualified gratuitous transfers described in subparagraph (C) may be paid to or for the use of any person other than an organization described in section 170(c),

(C) following the termination of the payments described in subparagraph (A), the remainder interest in the trust is to be transferred to, or for the use of, an organization described in section 170(c) or is to be retained by the trust for such a use or, to the extent the remainder interest is in qualified employer securities (as defined in subsection (g)(4)), all or part of such securities are to be transferred to an employee stock ownership plan (as defined in section 4975(e)(7)) in a qualified gratuitous transfer (as defined by subsection (g)), and

(D) the value (determined under section 7520) of such remainder interest is at least 10 percent of the initial net fair market value of all property placed in the trust.

*Id.* § 664(d)(1).

[4]Section 664 of the Internal Revenue Code provides that a charitable remainder unitrust is a trust

(A) from which a fixed percentage (which is not less than 5 percent nor more than 50 percent) of the net fair market value of its assets, valued annually, is to be paid, not less often than annually, to one or more persons (at least one of which is not an organization described in section 170(c) and, in the case of individuals, only to an individual who is living at the time of the creation of the trust) for a term of years (not in excess of 20 years) or for the life or lives of such individual or individuals,

(B) from which no amount other than the payments described in subparagraph (A) and other than qualified gratuitous transfers described in subparagraph (C) may be paid to or for the use of any person other than an organization described in section 170(c),

(C) following the termination of the payments described in subparagraph (A), the remainder interest in the trust is to be transferred to, or for the use of, an organization described in section 170(c) or is to be retained by the trust for such a use or, to the extent the remainder interest is in qualified employer securities (as defined in subsection (g)(4)), all or part of such securities are to be transferred to an employee stock ownership plan (as defined in section 4975(e)(7)) in a qualified gratuitous transfer (as defined by subsection (g)), and

(D) with respect to each contribution of property to the trust, the value (determined under section 7520) of such remainder interest in such property is at least 10 percent of the net fair market value of such property as of the date such property is contributed to the trust.

*Id.* § 664(d)(2).

You explain that the A&M System's duties in administering a charitable remainder trust would include "calculating the interest of the . . . donor" and making "ongoing calculations . . . to determine the annual payment to the beneficiary of CRUTS as well as the tax classification of the distributions to any non-charitable beneficiary." Request Letter, *supra* note 1, at 1. You state that although "once in place these vehicles are fairly straightforward, more complex versions would call for fairly sophisticated decision-making by the fiduciary." *Id.*

In support of the A&M System's position that it is authorized to administer charitable remainder trusts, The University of Texas System (the "UT System") has submitted a brief describing its charitable remainder trust program.[5] The UT System informs us that it has administered CRATS and CRUTS for over 30 years and that it currently administers over 40 charitable remainder trusts with a combined value of over $32 million. *See* UT System Brief, *supra* note 5, at 2, 4. The UT System contracts with The University of Texas Investment Management Company (UTIMCO)[6] to manage such trusts "[t]o insure invested trust assets result in a reasonable amount of income or gain from the sale or disposition of the assets." *Id.* at 3. "In addition to managing and investing the funds . . . , UTIMCO satisfies all federal filing requirements and provides annual accountings to the noncharitable beneficiaries." *Id.* at 4. The UT System informs us that its board of regents' rules require that in order for that system to administer a charitable remainder trust, "[a] minimum of $50,000 in principal is needed" and the system or one of its component institutions must receive at least 50 percent of the remainder interest. *See id.* at 3. The UT System asserts that these charitable remainder trusts "will provide much needed future support for the component institutions of the U.T. System." *Id.* at 4.

In addition to the administrative duties described by the A&M and UT Systems, a trustee also has certain legal duties and obligations imposed by the Texas Trust Code.[7] *See* TEX. PROP. CODE ANN. §§ 113.001-.026 (trustee's powers), 113.051-.060 (trustee's duties) (Vernon 1995 & Supp.

---

[5]*See* Brief from Cullen M. Godfrey, General Counsel, The University of Texas System, to Nancy S. Fuller, Chair, Opinion Committee, Office of the Attorney General (Nov. 17, 2003) (on file with the Opinion Committee) [hereinafter UT System Brief].

[6]UTIMCO is a section 501(c)(3) investment management corporation formed by the UT System board of regents to manage investment assets under the board of regents' fiduciary care. The UT System board of regents contracts with UTIMCO to invest funds under its fiduciary control. *See* http://www.utimco.org.; *see also* TEX. EDUC. CODE ANN. § 66.08(b) (Vernon 2002) ("The [UT System board of regents] may enter into a contract with a nonprofit corporation for the corporation to invest funds under the control and management of the board.").

[7]Pursuant to the Uniform Management of Institutional Funds Act, the Texas Trust Code does not apply to an institutional fund. *See* TEX. PROP. CODE ANN. § 163.009 (Vernon 1995) ("Subtitle B, Title 9 (the Texas Trust Code), does not apply to any institutional fund subject to this chapter.") (footnote omitted). However, a charitable remainder trust is not an "institutional fund" within the meaning of the Uniform Management of Institutional Funds Act. The Act defines an institutional fund as "a fund held by an institution for its exclusive use, benefit, or purposes, *except* a fund held for an institution by a trustee that is not an institution or *a fund in which a beneficiary that is not an institution has an interest* other than possible rights that could arise on violation or failure of the purposes of the fund," *id.* § 163.003(6) (emphasis added). A charitable remainder trust is "a fund in which a beneficiary that is not an institution has an interest other than possible rights that could arise on violation or failure of the purposes of the fund." *See id.*; *see also id.* § 163.003(5) ("'Institution' means an incorporated or unincorporated organization organized and operated exclusively for educational, religious, or charitable purposes, *an institution of higher education*, or a foundation chartered for the benefit of an institution of higher education.") (emphasis added), (7) ("'Institution of higher education' has the meaning assigned by Section 61.003, Education Code.").

2004). The Texas Trust Code requires as a general matter that a trustee must have the "legal capacity to take, hold, and transfer the trust property" and must accept the trust. *See id.* §§ 112.008(a), .009 (Vernon 1995).

We address the A&M System's general authority under the Education Code and other law to accept and administer charitable remainder trusts and to act as trustee for such trusts. You do not specify whether the A&M System's work in connection with these trusts would include business activities that might be regulated by other law, and we do not consider whether the A&M System must comply with any other such law in engaging in such activities.[8] Furthermore, in answering your query, we assume that the A&M System would pay charitable remainder trust beneficiaries income payments from trust assets, as opposed to public funds, and that the A&M System would receive adequate compensation for administering a trust. Thus, we do not consider any issues that might arise with respect to the A&M System expending public funds in connection with administering a charitable remainder trust.[9] Finally, we also assume that the A&M System or one of its component institutions would receive the remainder (or a substantial portion of the remainder) of any charitable remainder trust administered by the A&M System and that the A&M System would ultimately benefit from any such trust.

You specifically ask about the A&M System's authority under section 85.30 of the Education Code. Section 85.30 provides as follows:

> (a) *Donations of property may be made* and accepted by the board for the purpose of establishing or assisting in the establishment of a professorship, chair, or scholarship in the university system or any of its component institutions or *for creating in the university system or any of its component institutions any trust for any lawful, educational, or charitable purpose,* either temporarily or permanently, and the donations or trusts thereby created will be governed by the rules prescribed by this section.

> (b) The legal title to the property shall be vested in the board acting as an entity, or the State of Texas, to be held in trust for the purpose under any directions, limitations, and provisions that may be declared in the donation or trust agreement, not inconsistent with the objectives and proper management of the system or its component institutions.

> (c) The donor may declare and direct the manner in which the title to the property shall thereafter be transmitted from the trustee in

---

[8]*See, e.g., Ozee v. Am. Council on Gift Annuities,* 888 F. Supp. 1318, 1322-25 (N.D. Tex. 1995) (addressing the authority of a nonprofit corporation to sell charitable gift annuities).

[9]*See, e.g.,* Tex. Att'y Gen. Op. No. JM-551 (1986) (considering the authority of Southwest Texas State University serving as trustee of ranch property to expend appropriated funds for permanent improvements and operation of the trust).

> continued succession, to be held for and appropriated to the declared purposes.
>
> (d) The donor may declare and direct the person or class of persons who shall receive the benefit of the donation and the manner of their selection.
>
> (e) The declarations, directions, and limitations shall not be inconsistent with the objects and proper management of the system or its institutions.
>
> (f) The title to the property donated shall be received, and the trust conferred in the donation shall be assumed, subject to laws that may be passed and carried into effect from time to time which may be necessary to prevent the loss of or damage to the property donated or an abuse or neglect of the trust so as to defeat, materially change, or prevent the objects of the donation.
>
> (g) Copies of the donation shall be filed with the board.

TEX. EDUC. CODE ANN. § 85.30 (Vernon 2002) (emphasis added). You also ask about section 85.31, which provides that "[t]he board may at its discretion charge administrative fees for services rendered in the management and administration of any trust estate under the control of the system or any component of the system." *Id.* § 85.31(a).

Section 85.30(a) authorizes the board of regents to accept property donations "for the purpose of establishing . . . a professorship, chair, or scholarship in the university system or any of its component institutions or *for creating in the university system* or any of its component institutions any trust for any lawful, educational, or charitable purpose." *Id.* § 85.30(a) (emphasis added). It is not clear to us that a charitable remainder trust, which will have at least one noncharitable income beneficiary and will not be distributed to the A&M System until the death of the income beneficiaries or at the end of a specific term, is a trust "creat[ed] *in* the university system" as contemplated by this provision. *See id.* (emphasis added); *see also id.* § 85.30(b)-(c), (f). Furthermore, section 85.31 broadly authorizes the board to "charge administrative fees for services rendered in the management and administration of any trust estate," but does not itself authorize the A&M System to act as trustee. Thus, in order to answer your question, we look beyond sections 85.30 and 85.31.

The A&M System is governed by a board of regents, to which chapter 85 of the Education Code grants broad authority. *See id.* § 85.11 (government of the A&M System "is vested in a board of nine regents"); *see also id.* § 85.01(2) (for chapter 85 purposes "board" means "the board of regents of The Texas A & M University System"). Section 85.21(a) of the Education Code provides that the board of regents "shall make bylaws, rules, and regulations it deems necessary and proper for the government of the university system and its institutions, agencies, and services." *Id.* § 85.21(a). Attorney general opinions have concluded that section 85.21(a) and similar provisions

granting broad powers to certain other state university board of regents give those "state universities . . . broad authority to provide services and perform functions not expressly authorized by statute." Tex. Att'y Gen. Op. No. DM-329 (1995) (concluding that although no statute expressly authorizes a state university to operate a debit card program, a court could construe the broad statutory powers of a board of regents to impliedly authorize a state university to do so); *see also* Tex. Att'y Gen. Op. No. JM-1146 (1990) (concluding that statutes authorized the A&M System board of regents to operate the faculty club as an auxiliary enterprise). Moreover, given their broad powers, "[s]tate institutions of higher education have authority to undertake a wide variety of activities that are not strictly educational but that support the educational mission of the university." Tex. Att'y Gen. Op. No. DM-429 (1996) at 6. Relying on a state university board of regents' broad powers, a 1941 opinion of this office recognized a board of regents' authority to establish a department to "'develop[] the University through gifts and endowments,'" and to use public funds to pay the department's expenses. *See* Tex. Att'y Gen. Op. No. O-4167 (1941) at 3, 7 (authority of the UT System board of regents to manage and govern the university under former law included authority to spend appropriated funds for public relations and fund-raising).

More specifically, chapter 85 expressly authorizes the A&M System to accept and administer gifts. Section 85.21(b) provides that the board of regents "is specifically authorized, upon terms and conditions acceptable to it, to accept and administer gifts, donations, grants, and endowments, from any source, for use by the system or any of the components of the system." Tex. Educ. Code Ann. § 85.21(b) (Vernon 2002). This office has concluded that a provision similar to section 85.21(b) grants the UT System board of regents "considerable discretion to accept donations 'of any kind' with conditions attached by the donor." Tex. Att'y Gen. Op. No. MW-373 (1981) (concluding that Education Code section 65.31(e) authorized the UT System board of regents to provide office space, utilities, and telephone service to the University of Texas Law School Foundation, a nonprofit corporation, as terms and conditions attached to the foundation's donations). Thus, the A&M System board of regents has broad authority to accept and administer conditional gifts.

In addition, other laws recognize the authority of state institutions of higher education to hold property in trust. Subchapter A of chapter 51 of the Education Code, which governs funds of institutions of higher education, including the A&M System, generally recognizes governing boards' authority to hold and invest donations and gifts, including trust funds. *See* Tex. Educ. Code Ann. § 51.002(a)(10) (Vernon 1996) (the governing body of certain institutions including the A&M System may retain control of certain funds including donations and gifts to the institution).[10] For example, section 51.0031(a) provides that "[a] governing board may deposit funds under its control . . . , may invest funds under its control in accordance with Chapter 2256, Government Code and, with regard to donations, gifts, and trusts, may establish endowment funds that operate as trusts and are managed under prudent person standards." *Id.* § 51.0031(a) (Vernon Supp. 2004). And section 51.004(b) provides that "[a]ll trust funds, including gifts, grants, and bequests received, establishing or adding to endowment funds, loan and scholarship funds, and funds for other current restricted

---

[10]*See also* Tex. Educ. Code Ann. §§ 51.001 ("The provisions of this subchapter apply to each institution of higher education, as that term is defined by Section 61.003 of this code, including each public junior college to the extent possible."), 61.003(3), (8) (including the A&M System within definition of institution of higher education) (Vernon 1996 & Supp. 2004).

purposes, shall be credited to separate accounts and shall not be commingled with other local or institutional funds." *Id.* § 51.004(b) (Vernon 1996). The Government Code recognizes the authority of institutions of higher education to accept and hold real property in trust. *See* TEX. GOV'T CODE ANN. § 2204.003 (Vernon 2000) ("An institution of higher education, as defined by Section 61.003, Education Code, may accept a gift or devise of real property from a private entity to establish scholarships or professorships or to be held in trust for other educational purposes only if done consistently with rules and regulations adopted by the Texas Higher Education Coordinating Board pursuant to its power to adopt such rules and regulations under Chapter 61, Education Code.").

Finally, chapter 182 of the Finance Code regulates state trust companies, which include entities that act as trustee under a written agreement or that receive money and other property in a trustee capacity to invest. *See* TEX. FIN. CODE ANN. § 182.001(b)(1)-(2) (Vernon Supp. 2004). Generally, entities that engage in the trust business must obtain a state trust company charter. *See id.* § 182.006. However, the legislature has exempted state institutions of higher education from that requirement, thus recognizing their authority to act as trustee. *See id.* § 182.021(13) ("a company does not engage in the trust business in a manner requiring a state charter by . . . acting as trustee by a public, private, or independent institution of higher education or a university system, as defined by Section 61.003, Education Code, including an affiliated foundation or corporation of such an institution or system acting as trustee as provided by the Education Code").

Taken together, these provisions clearly recognize the authority of a state institution of higher education to act as a trustee and to hold property in trust. While it is not clear whether section 85.30 of the Education Code contemplates charitable remainder trusts, it specifically authorizes the A&M System board of regents to accept and hold property in trust, *see* TEX. EDUC. CODE ANN. § 85.30(a)-(b), (f) (Vernon 2002), and section 85.31 authorizes the board to charge fees for managing and administering "any trust estate under the control of the system," *id.* § 85.31(a). Thus, although no statute may expressly authorize the A&M System to accept or administer charitable remainder trusts in particular, we conclude that the A&M System's authority with respect to trusts in general together with its broad grant of power in section 85.21(a)-(b) to adopt rules and to accept and administer gifts give the A&M System board of regents the authority to accept charitable remainder trusts as gifts and to administer charitable remainder trusts from which the A&M System or one of its components will receive the charitable remainder. *See id.* § 85.21(a) (the A&M System board of regents' rulemaking authority), (b) (the A&M System board of regents "is specifically authorized, upon terms and conditions acceptable to it, *to accept and administer gifts, donations,* grants, and endowments, *from any source, for use by the system* or any of the components of the system") (emphasis added). Because we believe that other provisions authorize the A&M System to accept and administer charitable remainder trusts, we need not resolve whether section 85.30 of the Education Code authorizes the A&M System to administer that particular type of trust.

## S U M M A R Y

The Texas A&M University System is authorized to administer charitable remainder trusts from which the system or one of its components will receive the charitable remainder.

Very truly yours,

GREG ABBOTT
Attorney General of Texas

BARRY R. MCBEE
First Assistant Attorney General

DON R. WILLETT
Deputy Attorney General for Legal Counsel

NANCY S. FULLER
Chair, Opinion Committee

Mary R. Crouter
Assistant Attorney General, Opinion Committee